IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

ALBERTO ARTHUR,

                            Petitioner,

    -vs-                                    **No. 07-CV-6158(CJS)(VEB)**
                                            **No. 07-CV-6473 (CJS)(VEB)**
                                            **REPORT AND RECOMMENDATION**

ALBERTO GONZALES[1], Attorney General,
Michael Chertoff, Secretary of the
Department of Homeland Security, WILLIAM
CLEARY, U.S. I.C.E. Field Office Director,
and CHARLES MULE, Facility Director,

                            Respondents.

_____

## I.    Preliminary Statement

These matters were referred to me pursuant to 28 U.S.C. § 636(b)(1) for a Report and

Recommendation on the petition for a writ of habeas corpus filed by *pro se* petitioner Alberto

Arthur ("Arthur" or "petitioner") pursuant to 28 U.S.C. § 2241. Arthur, who has been found to

be a deportable criminal alien under the Immigration and Naturalization Act ("INA")

§237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), challenges his continued detention in the

custody of the Department of Homeland Security, Immigration and Customs Enforcement

("DHS/ICE"). Arthur's first habeas petition was filed on or about March 31, 2007. *See Arthur v.*

*Gonzales*, No. 07-CV-6158(CJS)(VEB) (W.D.N.Y. 2007). While the first petition was still

pending, Arthur filed another petition for § 2241 relief, again challenging his continued

detention in DHS custody. *See Arthur v. Gonzales*, No. 04-CV-6473(CJS)(VEB) (W.D.N.Y.

_____

[1]         Pursuant to Fed. R. Civ. P. 25(d)(1), Michael B. Mukasey is automatically substituted for former
Attorney General Albert R. Gonzales as a respondent in this case.

2007). Because both of his petitions relate to the same allegedly wrongful act–his continuous detention in DHS custody following the commencement of removal proceedings against him, respondent has requested that they be consolidated. I see no reason why respondent's request should not be granted. In the interest of judicial economy, I hereby order that the petitions be consolidated under the docket number of the first-filed petition, No. 07-CV-6158. *Accord*, *e.g.*, *Giwah v. McElroy*, No. 98-CV-6028 (JG),1999 WL 104593, *2 n.5 (E.D.N.Y. Feb. 23, 1999).

## II.    Factual Background and Procedural History

Respondents contend that Arthur is a native and a citizen of Panama. Although Arthur admits that he is a *native* of Panama, he continues to deny that he is a *citizen* of Panama, claiming derivative United States citizenship by virtue of the citizenship of the man whom he alleges to be his father–a William Arthur, II, born in Tennessee in 1924. The parties agree that Arthur was born on May 16, 1954, in Panama, and that he originally was admitted to the United States of America at Miami, Florida, on or about May 15, 1983, as a lawful permanent resident. *See* Respondent's Exhibit ("Resp't Ex.") A (Docket No. 4-3) at 14, 15, attached to Respondent's Memorandum of Law (Docket No. 4).

Removal proceedings against Arthur were initiated pursuant to IINA § 237(a)(2)(A)(iii); he was charged with being subject to removal from the United States as an alien who had been convicted of an "aggravated felony" for which a term of imprisonment of at least one year was imposed. Declaration of George F. Scott ("Scott Decl."), ¶5 (Docket No. 5-1, No. 04-CV-6473). The "aggravated felony" at issue here was Arthur's criminal conviction in 1991 for sexual abuse

of a minor.[2]

Some fourteen years later, on March 30, 2006, DHS Special Agent Michael Pausic filed a Record of Deportable/Inadmissible Alien detailing Arthur's immigration status. A Warrant of Arrest/Notice to Appear concomitantly was issued by Pausic on March 30, 2006. Based on Arthur's "alien file; [c]heck of ICE related indices; [c]ertified copies of [Arthur's] criminal convictions," Pausic concluded that Arthur was deportable based on the presence in his criminal history of a conviction for an aggravated felony–namely, the 1991 conviction-by-guilty plea to one count of sexual abuse of a minor. *See* Resp't Ex. A, pp. 14 *et seq.* (Docket No. 4-3); 8 U.S.C. § 1227(a)(2)(A). The March 30, 2006 Record of Deportable/Inadmissible Alien included Arthur's entire criminal history, which commenced in 1984, one year after his arrival in this country, and showed convictions in New York, Pennsylvania, and Arizona. The Record of Deportable/Inadmissible Alien also indicated that, ten days earlier, on March 20, 2006, the Syracuse Police Department had issued a warrant for Arthur's arrest "for the offense of Rape-Strongarm, (1st Degree)," that was still outstanding at the time of the DHS agent's filing of the Record of Deportable/Inadmissible Alien. *Id.* at 18.

It appears that Arthur was taken into custody by local officials in Syracuse on May 11, 2006, and detained at the Onondaga County Jail. On July 31, 2006, DHS/ICE issued an Immigration Detainer – Notice of Action regarding Arthur; this required that the Onondaga County Jail hold Arthur in custody until he was picked up by DHS/ICE officials. It appears that

---

[2]        In June of 1990, Arthur was indicted by a grand jury sitting in Onondaga County, New York, on charges of first degree rape, first degree sexual abuse, first degree sodomy, and endangering the welfare of a child; the victim was a ten-year-old girl named in the indictment as "Jane Doe." On April 16, 1991, on the advice of counsel, Arthur pled guilty in the Onondaga County Court in the State of New York, to one count of sexual abuse in the first degree (New York Penal Law § 130.65(3)), a class D felony. Pursuant to this guilty plea, which satisfied the pending indictment, Arthur was sentenced to a term of imprisonment of one year, from which he was released  in 1992 after serving eight months. Resp't Ex. A, pp. 4, 21 (Docket No. 4-3).

on September 13, 2006, Arthur was served with a Notice to Appear, which placed him in immigration removal proceedings. Arthur refused to sign the Notice, however.

Pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), the Notice to Appear charged Arthur with being subject to removal from the United States as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)(43)(A), that is, a violation of a law relating to sexual abuse of a minor. *See* Resp't Ex. A, pp. 4-5) (Docket No. 4-3, No. 07-CV-6158). The attached Notice of Custody Determination, dated September 12, 2006, stated that pursuant to the authority contained in INA § 236 and Part 236 of Title 8, Code of Federal Regulations, Arthur would remain detained in the custody of DHS/ICE "pending a final determination by the immigration judge . . . , and in the event you are ordered removed from the United States, until you are taken into custody for removal . . . ." Resp't Ex. A, p. 6 (Docket No. 4-3, No. 07-CV-6158). The Notice of Custody determination also advised Arthur that he could request review of the custody determination by an immigration judge. *Id.*

On or about March 13, 2007, as noted above, Arthur filed the instant petition for a writ of habeas corpus in district court, seeking release from his continued detention in DHS/ICE custody. *See generally* Petition (Docket No. 1, No. 07-CV-6158).[3] In his Petition, notarized on March 13, 2007, and received by the Clerk of District Court on March 21, 2007, Arthur asserted that he "was ordered removed on MARCH 30, 2006, and the removal order became final on the same date" and, therefore, the "six-month presumptively reasonable removal period for Petitioner ended on September of [sic] 2006." Petition ("Pet."), ¶19 (Docket No. 1, No. 07-CV-6158). Arthur contended in his Petition (1) that his "continued illegal detention cruelty

---

[3]      It should be noted that Arthur filed his petition before he had had a hearing or received a decision from the Immigration Judge regarding whether he would be removed from the United States.

punishment unnecessary [sic]" violated *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) that his

"continued detention violates Petitioner's right to substantive due process"; (3) that he, as "an

alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be

detained," and that he "has been denied that opportunity" because "ICE does not make decisions

concerning [an] alien's custody status in a neutral and impartial manner." *See* Pet., ¶¶ 21-27

(Docket No. 1, No. 07-CV-6158).

Respondents filed an Answer and Return in opposition to the Petition, noting that a final

order of removal had not been issued at the time Arthur filed his habeas Petition on March 13,

2007. Respondents thus construed Arthur's claims regarding his custody as arising under INA §

236(c), which governs the detention of criminal aliens in the pre-final-removal-order context.

On April 16, 2007, Immigration Judge John B. Reid ("the IJ") entered a decision finding

that Arthur had failed to prove that he is a citizen of the United States, and that the Government

had established Arthur's aggravated felony conviction by clear and convincing evidence, making

him deportable. Accordingly, the IJ ordered that Arthur be removed from the United States to

Panama. *See* Resp't Ex. A, p. 2 (Docket No. 4-3, No. 07-CV-6158). On May 7, 2007, Arthur

filed a timely appeal of the IJ's decision with the Board of Immigration Appeals ("BIA"). *See*

Resp't Ex. A, p. 1) (Docket No. 4-3). On August 6, 2007, the BIA dismissed Arthur's appeal of

the IJ's order of removal. *See* Resp't Ex. A, pp. 1-4) (Docket No. 11-1, 07-CV-6158). The BIA

agreed with the IJ's findings and affirmed the removal order.  *See id.*

On December 13, 2007, respondents moved to dismiss the first petition on the basis of

the final order of removal being issued by the BIA on August 6, 2007. *See* Affidavit of Gail

Mitchell, Esq. in Support of Respondent's Motion to Dismiss ("Mitchell Aff.") (Docket No. 11,

No. 07-CV-6158). Respondent argued that any claim Arthur had under INA § 236(c) regarding his pre-final-removal-order detention had been mooted by the fact that a final order of removal had been issued. I issued an Order indicating that, on the submissions made so far, I was inclined to agree with respondent's argument regarding mootness and invited Arthur to respond to the motion to dismiss should he choose to do so. Arthur responded to the motion to dismiss in a pleading titled "Answer and Return Memorandum of Law in Opposition to the Petition of Respondents [sic] Motion to be Dismiss [sic] Respondents [sic] Petition". Arthur did not address the mootness argument but instead repeated his arguments as to why the removal order is erroneous and why he is being illegally held in custody.

It subsequently came to the Court's attention that Arthur had requested and has received a stay of removal from the United States Court of Appeals for the Second Circuit. *See* Docket Sheet in *Arthur v. Mukasey*, No. 07-2353 (2d Cir. June 7, 2007). Based on this Court's review of the Second Circuit's docket sheet regarding Arthur's case, it appears that Arthur's motion for a stay was granted on December 21, 2007, about one week after respondents filed their motion to dismiss on mootness grounds in this Court. The merits of Arthur's petition for review of his final removal order is scheduled to be heard by a panel of the Circuit Court on or about October 27, 2008. The issuance of a formal judicial stay by the Second Circuit complicates the analysis of the custody issues presented by Arthur's case, and so the Court has had occasion to reconsider its initial agreement with respondents' mootness argument.   The Court finds that in the interest of judicial economy, justice is better served by deciding the petitions on the merits as opposed to the procedural grounds of mootness.

Although the Court's analysis has changed somewhat, the Court ultimately has concluded

that, on the merits, Arthur's claims do not warrant habeas relief. Thus, for the reasons that follow, the Court recommends dismissal of both of Arthur's petitions (that is, the petitions pending in No. 07-CV-6158 and No. 07-CV-6473).

**JURISDICTION**

A federal district court may issue a writ of habeas corpus to a Department of Homeland Security detainee who is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Maleng v. Cook*, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under 28 U.S.C. § 2241 because Arthur was detained within its jurisdiction at the time he filed his Petition, and he asserts that his detention is not authorized under the Federal immigration statutes and is in violation of his Federal constitutional rights. *See Zadvydas*, 533 U.S. at 699.

I.   **DISCUSSION**

   A.   **Detention of Aliens – General Legal Principles**

Federal law provides for the detention of removable aliens in two separate circumstances: Section 236 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226, governs the detention of aliens who are not under an administratively final order of removal. In particular, INA § 236(c) provides for the mandatory detention of criminal aliens, such as Arthur.

Section 241 of the INA, codified at 8 U.S.C. § 1231, pertains to the detention of aliens whose order of removal has become administratively final. Because Arthur filed his first Petition before he even had a hearing before the IJ, let alone a final order of removal, respondents construed the first Petition to allege that he was being detained pursuant to INA § 236(c)(1), 8 U.S.C. § 1226 (c).

Now, however, respondents assert that Arthur is being detained pursuant to INA § 241(a) because he has become subject to an administratively final order of removal. Mitchell Aff., ¶4 (Docket No. 11, No. 07-CV-6158) (citing 8 C.F.R. § 1241.1 ("An order of removal made by the immigration judge . . . shall become final . . . upon dismissal of an appeal by the [BIA][.")). However, a review of the federal case law on this issue reveals that the stay of removal granted by the Second Circuit affects the determination of whether detention during the pendency of the stay is pursuant to INA § 236(c) or INA § 241(a), as discussed more fully below.

> **B.    Petitioner's Detention From May 11, 2006, to August 6, 2007**

> **1.    Chronology of Events**

Arthur contests the legality of the entire period of his detention in DHS custody, which he believes commenced on March 30, 2006. In his Petition, Arthur asserted that he was ordered removed on March 30, 2006, and "the removal order became final on the same date." Petition, ¶19 (Docket No. 1, No. 07-CV-6158). Therefore, Arthur argued, "the six-month presumptively reasonable removal period for Petitioner ended on September of [sic] 2006." *Id.*  Arthur is incorrect in his belief that he was ordered removed on March 30, 2006–this date was nearly six months *prior* to his being served on September 13, 2006, with the Notice of Custody. What occurred on March 30, 2006, was the filing of a Record of Deportable/Inadmissible Alien, which

detailed, *inter alia*, Arthur's criminal history. Along with the Record of Deportable/Inadmissible Alien, the DHS agent also filed a Warrant for Arrest. It appears that Arthur was taken into custody by the Syracuse Police Department and placed in the Onondaga County Jail on or about May 11, 2006, although it is precisely clear whether this was pursuant to the local arrest warrant or the DHS warrant.

The Government issued an Immigration Detainer directed to the Onondaga County Jail with regard to Arthur on July 31, 2006. Then, on September 12, 2006, a Notice to Appear was issued. The following day, September 13, 2006, DHS/ICE issued a Notice of Custody Determination stating that Arthur was being mandatorily detained under the authority of INA § 236(c), because he was classified as a "criminal alien." Arthur was given notice that he could appeal this determination, but his appeal apparently was unsuccessful.

Arthur next appeared before the IJ on October 4, 2006. R.515.[4] The matter was reset to October 17, 2006, to give Arthur time to secure legal representation. On that date it was adjourned to October 26, 2006, and to November 9, 2006, so that Arthur could retain a lawyer. R.516. In addition, Arthur had submitted a Form-600 (application for citizenship) to DHS/ICE, which was still in the process of being adjudicated. *Id.* On November 9, 2006, the matter was adjourned until November 28, 2006, on which date Arthur said that he spoken to an attorney who might represent him. R.516. In addition, Arthur had submitted to the IJ additional documentation in connection with his application for a certificate of citizenship. Thus, the IJ adjourned the

---

[4] Citations to "R.__" refer to pages in the record on appeal filed electronically with the Second Circuit in connection with Arthur's petition for review. Fortunately, these documents were available via the Second Circuit's website as respondents failed to provide the Court with them. Arthur did not provide the necessary documents either, but he is proceeding *pro se* and does not appear to have copies of the transcript before the IJ, for example, which provides background helpful to determining the circumstances of Arthur's custody .

matter again to December 14, 2006.

As of December 14, 2006, DHS/ICE was still seeking information to adjudicate Arthur's citizenship application, and Arthur was still attempting to retain counsel. The matter was adjourned until January 9, 2007, on which date the citizenship application still had not been adjudicated. Arthur was attempting to obtain records from the Department of the Army relating to his alleged father's military service, but had to fill out additional paperwork because a fire had destroyed some of the records. The matter was adjourned until January 23, 2007. R.516.

On January 23, 2007, Arthur again appeared without an attorney. In view of the length of time that the matter had been pending, the IJ determined that it should go forward. R.517. Under oath, Arthur admitted that he was a native of Panama, having been born in that country. He denied, however, that he was a citizen of Panama, and denied the Government's allegation that he was not a citizen or national of the United States. Arthur believes that he became a citizen of the United States at birth, by virtue of his alleged father, William Arthur, II, who was born in Tennessee in 1924. R.517. Arthur denied that he had been convicted of sexual abuse in the first degree on April 16, 1991, principally alleging that the victim's allegations were fabricated, he did not commit the crimes alleged, he was coerced by his trial attorney into pleading guilty a week before trial, and he did not know what was occurring when he appeared in court and accepted the guilty plea. *E.g.*, R.517, 519.

As a result of Arthur's averments, the IJ reset the matter to March 2, 2007, to have a hearing on removability. On March 2, 2007, testimony was taken from Arthur regarding his citizenship and the criminal conviction for sexual abuse. Because Arthur also expressed a fear of the consequences of returning to Panama, he was given an Application for Asylum and for

Withholding of Removal, and the matter was reset for March 26, 2007. (As noted above, Arthur filed his first § 2241 habeas petition in this Court on or about March 13, 2007.) A hearing was held before the IJ on March 26, 2007, regarding his asylum application, at which Arthur was the only witness who testified in that regard.

On April 16, 2007, the IJ placed on the record a lengthy oral decision finding that the Government had established Arthur's removability based upon clear and convincing evidence and that Arthur had not carried his burden of showing that he was eligible for asylum or the wittholding of removal.[5] *See* R.515-36. Arthur filed a timely appeal of the IJ's decision with the BIA.

Meanwhile, on June 4, 2007, the portion of Arthur's habeas petition challenging the merits of the IJ's removal order had been transferred to the United States Court of Appeals for the Second Circuit in accordance with the REAL ID Act of 2005. Respondents moved to dismiss Arthur's Second Circuit petition on the basis of lack of jurisdiction, since the BIA had not issued an order regarding petitioner's appeal. The Second Circuit accordingly dismissed the petition without prejudice on August 7, 2007. *See* Docket Sheet in *Arthur v. Mukasey*, No. 07-2353 (2d Cir. 2007).

Coincidentally, the BIA affirmed the IJ's ruling in a written decision filed August 6, 2007. Arthur timely moved on September 10, 2007, to have his petition for review before the Second Circuit reinstated, as well as for a stay of removal. On December 20, 2007, the Second

---

[5]    The Court notes that although there was a lengthy period between Arthur first being taken into custody in March 2006 or May 2006, and date of the IJ's removal order on April 16, 2007, the numerous delays were occasioned by adjournments by the IJ in Arthur's favor, so as to give him time to find an attorney and to receive a final adjudication on his pending citizenship application. Thus, there is no indication that the Government acted in bad faith to purposely delay Arthur receiving a hearing and decision on the question of his removability.

Circuit granted the motion for reinstatement and also granted a stay of removal pending their

final disposition of the petition. As of July 18, 2008, the Second Circuit docket sheet indicates

that Arthur's appeal is scheduled to be heard during the week of October 27, 2008. I note that

Arthur, who is indigent, has been appointed counsel by the Second Circuit.

### 2.    INA §236, 8 U.S.C. § 1226

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility

Act of 1996 ("Immigration Reform Act" or "IIRIRA"), which substantially amended the INA.

IIRIRA, along with the 1996 amendments to the federal habeas statute in the Anti-terrorism and

Effective Death Penalty Act ("AEDPA"), drastically changed immigration law and the

availability of habeas corpus relief for aliens convicted of "aggravated felonies," a term whose

definition has been expanded under the new laws.

The IIRIRA amendments included "Transition Period Custody Rules," including IIRIRA

section 303(b)(3), which provided for Immigration Court bond hearings to aliens with criminal

convictions. IIRIRA § 303(b)(3) allowed the alien the right to demonstrate legal entry into the

United States and the right to show that the alien did not present a substantial risk of flight or

threat to persons or property. *Lezcano v. Reno*, No. C 99-4894 MJJ, 2000 WL 1175564, at *2

(N.D.Cal. Aug. 4, 2000). If the alien met these criteria, the Immigration Court had the discretion

to set bond pending the final administrative action on the case. *Id.*

However, on October 9, 1998, IIRIRA's Transition Period Custody Rules expired and

INA section 236(c), 8 U.S.C. § 1226(c), became effective. *Lezcano*, 2000 WL 1175564, at *2.

Section 236(c) is entitled "Detention of criminal aliens," and provides that "The Attorney

General *shall take into custody any alien* who . . . (B) is deportable by reason of having

committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this

title." 8 U.S.C. § 1226(c)(1) (emphasis added). INA § 236(c), which is applicable in Arthur's

case, provides in pertinent part as follows:

> The Attorney General *shall take into custody* any alien who–
>
>> (A) is inadmissible by reason of having committed any offense covered in
>> section 1182(a)(2) of this title,
>> (B) is deportable by reason of having committed any offense covered in
>> section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title [Title 8],
>> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an
>> offense for which the alien has been sentenced to a term of imprisonment of at
>> least 1 year,[6] or
>> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable
>> under section 1227(a)(4)(B) of this title,
>
>> when the alien is released [upon serving his sentence], without regard to
>> whether the alien is released on parole, supervised release, or probation, and
>> without regard to whether the alien may be arrested or imprisoned again for
>> the same offense.

8 U.S.C. § 1226(c)(1) (emphasis supplied).

INA § 236(c) categorically bars the Attorney General from "releas[ing] from custody"

any alien convicted of an aggravated felony or firearm offense who is not in the federal witness

protection program, as the following language makes clear:

> The Attorney General *may* release an alien described in paragraph (1) [of 8
> U.S.C. § 1226(c)] *only if* the Attorney General decides . . . that release of the alien
> from custody is necessary [under the federal witness protection program statute,
> 18 U.S.C. § 3521], *and* the alien satisfies the Attorney General that the alien will
> not pose a danger . . . and is likely to appear for any scheduled proceeding.

INA § 236(c), 8 U.S.C. § 1226(c) (emphases supplied). Thus, INA § 236(c) generally prohibits

---

[6]     The INA provides that "[a]ny alien who–(I) is convicted of a crime involving moral turpitude
committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under
section 1255(j) of this title) after the date of admission, and (II) is convicted of a crime for which a sentence of one
year or longer may be imposed, is deportable." 8 U.S.C. § 1227(a)(2)(A)(i). In addition, "[a]ny alien who is
convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

bail for criminal aliens during the pendency of their removal proceedings.[7] As the Supreme

Court has observed, § 236(c) "mandates detention *during* removal proceedings for a limited

class of deportable aliens–including those convicted of an aggravated felony." *Demore v. Kim*,

538 U.S. 510, 517-18 (2003) (emphasis added). As the Second Circuit has observed, "[t]he INA

defines 'aggravated felony' to include "sexual abuse of a minor." *James v. Mukasey*, 522 F.3d

250, 254 (2d Cir. 2008) (citing 8 U.S.C. § 1101(a)(43)(A) ("The term 'aggravated felony'

means– [the] murder, rape, or sexual abuse of a minor.")).

### 3. Legality of Petitioner's Detention Under INA § 236 During the Period Prior to the Final Order of Removal Issued on August 6, 2007

In its Notice to Appear/Notice of Custody Determination, the Government charged that

Arthur was "deportable" pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction for

first degree sexual abuse, for which he received a sentence of one year. Specifically, the Notice

to Appear directed to Arthur alleged, in pertinent part, as follows:

> You were, on April 16, 1991, convicted in the Onondaga County Court in and for
> the State of New York for the offense of SEXUAL ABUSE in the 1st DEGREE, to
> wit: the victim being a ten (10) year old, in violation of New York Criminal Law
> Statute 130.65(3), to which you were sentenced to one (1) year incarceration.

The Notice to Appear stated that on the basis of the Government's allegations regarding the

conviction, as well as its contention that he was not a United States citizen,

---

[7]     Under INA § 236(a), in contrast, detention of non-criminal aliens is discretionary, not mandatory:
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a
decision on whether the alien is to be removed from the United States. *Except as provided in
subsection (c) of this section* and pending such decision, the Attorney General–
>     (1) may continue to detain the arrested alien; and
>     (2) may release the alien on–
>         (A) bond of at least $1,500 with security approved by, and containing conditions
>         prescribed by, the Attorney General; or
>         (B) conditional parole . . .
8 U.S.C. § 1226(a) (emphasis supplied).

it is charged that you are subject to removal form the United States pursuant to
the following provision(s) of law: Section 237(a)(2)(A)(iii) of the Immigration
and Nationality Act (Act), as amended, in that, at any time after admission, you
have been convicted of an aggravated felony as defined in section 101(a)(43)(A)
of the Act, a law relating to sexual abuse of a minor.

Construing Arthur's pleadings liberally, as I am required to do, *see Haines v. Kerner*, 404

U.S. 519, 520-21 (1972) (*per curiam*), it appears that he is arguing that he cannot be categorized

as a criminal alien and therefore was not subject to mandatory detention under INA § 236.

Arthur states that he was "charged of the crime of sexual abuse ("D"-felony), from June of 1990.

(17 Years Ago) The petitioner was incarcerated on [sic] local facility for 7 months, by Plead [sic]

bargain. [sic] (for a crime that never happen [sic] and never committed.)" Petition, ¶12 (Docket

No. 1, No. 07-CV-6158). Unlike the habeas petitioner in *Demore v. Kim*, who conceded that he

was a criminal alien and thus subject to INA § 236(c), Arthur vigorously disputes the validity of

his prior conviction for sexual abuse, and therefore does not concede that his detention was

mandatory under INA § 236(c). Indeed, before the IJ, and in all of his pleadings thus far, Arthur

vehemently and consistently protests his innocence of the charges.[8]  Respondents have not

addressed this aspect of Arthur's pleadings. To the extent that Arthur is claiming that his

_____

[8]         According to Arthur's representations to the IJ, the victim was the daughter of a woman he was
dating, and was coerced by her grandmother–who disapproved of Arthur–into making false accusations of sexual
improprieties against him.  Arthur also contended that he did not understand what he was doing when he pled guilty,
and that his trial attorney did not want to prepare for trial, and therefore coerced him into pleading guilty. The IJ
explained to Arthur several times that the only evidence presented at the hearing was that Arthur entered a guilty
plea, under oath before a judge, and was sentenced to a one-year term of imprisonment, and thereby was "convicted"
of the crime charged for purposes of the INA.  The IJ further explained that he had no authority to hear Arthur's
complaints about the fairness of the guilty plea. Rather, the IJ told Arthur, in order to challenge his criminal
conviction, he needed to have filed a direct appeal or a collateral motion to vacate the judgment. However, it does
not appear that Arthur ever did so. Given the uncontroverted documentary evidence, the IJ presumed Arthur's
conviction to have been validly obtained following the full procedural protections that the New York state criminal
justice system offers.  Beyond his own protestations of innocence, Arthur has provided no evidence to undermine
DHS/ICE's and the IJ's conclusion that he was subject to mandatory detention during his removal proceedings under
INA § 1226(c). To the extent that Arthur claims that INA § 236(c) was improperly applied to him, the Court
recommends rejecting that contention, as well.

prolonged detention is unconstitutional under *Demore v. Kim* because, unlike the petitioner there, he did not concede deportability, I recommend that claim be denied for the following reasons.

The mandate of INA § 236(c) is deceptively simple in that it "leaves many questions unanswered, the most important of which is who, exactly, falls under the statute's provisions." *Tijani v. Willis*, 430 F.3d 1241, 1243 (9th Cir. 2005) (concurring op.).  INA § 236(c) "states only that mandatory detention applies to an alien who 'is deportable by reason of having committed' a number of specified criminal offenses, but does not define those offenses with precision, nor does it define what 'is deportable' means." *Id.*  Section 236(c)'s implementing regulations "provide an alien with the opportunity to establish that he is 'not properly included' in the statute's reach, but they say nothing about what, precisely, that alien must show." *Id.* (citing 8 C.F.R. § 1003.19 (2005)).

The BIA addressed this issue surrounding the scope of INA § 236(c) *In re Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999), in which it concluded that "the initial determination by the Bureau of Immigration and Customs Enforcement . . . that an alien fell within the reach of § 236(c) was entitled to a great deal of deference." *Id.* (citing *Joseph*, 22 I. & N. Dec. at 800). Under *Joseph*, an alien seeking to avoid the reach of INA § 236(c) is required to show that BICE was "substantially unlikely to establish" the charges that rendered the alien subject to mandatory detention. *Joseph*, 22 I. & N. Dec. at 806 ("Thus, in this context, a lawful permanent resident will not be considered properly included in a mandatory detention category only when an Immigration Judge is convinced that the Service is substantially unlikely to establish, at the merits hearing, the charge or charges that subject the alien to mandatory

-16-

detention."). An alien charged with being subject to INA § 236(c) is entitled to "a hearing at which he would have been entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category." *Demore v. Kim*, 538 U.S. 510, 514 (2003) (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); *Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999)).

Based on this Court's review of the documents before it, it appears that Arthur was notified of his right to have an immigration judge review the initial mandatory custody determination by DHS/ICE, although it is unclear whether an actual *Joseph* hearing was held in Arthur's case. The Court presumes that Arthur did not forego such a hearing, given his consistent averments that he is not guilty of the crime at issue. To the extent that he is requesting the Court to review an administrative decision by the IJ that he is subject to INA § 236(c), and therefore must be mandatorily detained, the Court is without authority to do so. A district court cannot review discretionary decisions made by the BIA or IJ in § 2241 habeas petitions, but may only review purely legal and statutory constitutional claims. *Sol v. INS*, 274 F.3d 648, 651 (2d Cir. 2001); *see also Shokeh v. Thompson*, 369 F.3d 865, 868-69 (8ᵗʰ Cir. 2004).

The BIA clarified in *Joseph* that the alien's conviction record can provide DHS/BICE with the requisite "reason to believe" that the alien had been convicted of an aggravated felony for purposes of charging and making the initial custody determination. *See Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053. However, the immigration judge is not bound by the conviction record if the record taken as a whole shows otherwise. *See id.* In this case, only the relevant and probative evidence in the record–i.e., the certificate of conviction–strongly supported the Government's finding that Arthur is a criminal alien convicted of an aggravated felony. All that

currently exists to counter the Government's contention are Arthur's own self-serving assertions of innocence. This Court cannot say that under *Joseph*'s extremely difficult standard, the Government was "substantially unlikely to establish" the 1991 conviction for sexual abuse of a minor, making Arthur a member of the statutorily-defined class of criminal alien for whom detention is mandatory under INA § 236(c).

Clearly, the BIA has created a system of "detention by default" with INA § 236(c), which "plac[es] the burden fully on the alien to prove that he should not be detained," *Tijani*, 430 F.3d at 1243. However, the Supreme Court has upheld the constitutionality of INA § 236(c), and has sanctioned the *Joseph* standard. *See Demore v. Kim*, 538 U.S. at 521 (Rehnquist, C.J., writing for the majority); *but see id.*, 538 U.S. at 578-79 (Breyer, J., dissenting) (advocating that the court interpret § 236(c) to apply mandatory detention in a more narrow fashion and require that only those immigrants who could not raise a "substantial" argument against their removability should be subject to mandatory detention).

Like Arthur, the habeas petitioner in *Demore v. Kim* was detained as a criminal alien. The alien there contended that the Fifth Amendment's Due Process Clause required him to be provided with a bond/bail hearing, that is, an individualized determination of his flight risk or dangerousness. According to Kim, the because the statute required detention for *all* criminal aliens within the statutorily-defined class, it violated Due Process. *Id.* at 514. The Supreme Court rejected that contention, finding that Congress was "justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers," and that, therefore, those criminal aliens may "be detained for the brief period necessary for their removal proceedings." *Id.* at 513. Detention of deportable

criminal aliens, pursuant to INA § 236(c), 8 U.S.C. § 1226(c), according to the Supreme Court in
*Demore v. Kim*, "necessarily serves the purpose of preventing [these] aliens from fleeing prior to
or during their removal proceedings." 538 U.S. at 527. The Supreme Court noted that detention
under INA § 236(c), 8 U.S.C. § 1226(c), has a "definite termination point," *id.* at 529, i.e., the
conclusion of removal proceedings against the alien. Thus, the Supreme Court rejected Kim's
Due Process challenge to the pre-removal-period detention of criminal aliens. Chief Justice
Rehnquist, in an opinion joined in relevant part by four other justices, held that the mandatory
detention provision of INA § 236(c) does not violate the Due Process Clause of the Constitution:
"Detention during removal proceedings is a constitutionally permissible part of that process."
Thus, to the extent that Arthur asserts that INA § 236(c) is unconstitutional on its face and was
unconstitutionally applied to him specifically, the Court recommends dismissal of these claims
since a  majority of the Supreme Court in *Kim* found that INA § 236(c) did not violate a alien's
substantive and procedural due process rights under the Fifth Amendment of the Constitution
because it mandates his detention without giving him the opportunity to show that he is suitable
for release on bail. *See Demore v. Kim*, 538 U.S. at 526.

C.     **INA § 241, the Commencement of the Removal Period, and Post-Removal-Period Detention**

INA § 241(a)(1)(A) provides that the government has a 90-day "removal period" to
remove an alien ordered removed from the United States. 8 U.S.C. § 1231(a)(1)(A).  Detention
during the 90-day removal period under INA § 241(a)(1)(A), Title 8 U.S.C. § 1231(a)(1)(A) is
mandatory.  In addition, INA § 241(a)(1)(C), Title 8 U.S.C. § 1231(a)(1)(C) provides that the
removal period "shall be extended, and the alien may remain in detention during such extended
period," if the alien "acts to prevent [his or her] removal subject to an order of removal." 8

U.S.C. § 1231(a)(1)(C), INA § 241(a)(1)(C).

Several points should be noted about INA § 241(a). First, although INA § 241(a)(1)(A), Title 8 U.S.C. § 1231(a)(1)(A) directs the government to remove aliens within 90 days after the alien "is ordered removed," the statute also provides that the 90-day removal period does not actually begin to run when the IJ judge orders an alien's removal. *See* 8 U.S.C. § 1231(a)(1)(B). This takes into account the reality that the Government may, for various reasons, be unable to remove an alien within 90 days of when an IJ first orders the alien's removal. The INA thus provides three different ways in which an alien's detention can be lawfully extended beyond the 90-day removal period. Under INA § 241(a)(1)(B), Title 8 U.S.C. § 1231(a)(1)(B), the "[90-day] removal period begins on the latest of the following events:

> (i) The date the order of removal becomes administratively final (upon issuance of an order by the BIA affirming the IJ's removal order, if the alien has taken a timely appeal);
>
> (ii) The date of the court's final order, if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien; or
>
> (iii) The date the alien is released from detention or confinement, if the alien is detained or confined (except under an immigration process).

INA § 241(a)(1)(B), 8 U.S.C. § 1231(a)(1)(B).

Second, even if the 90-day removal period has begun to run under INA § 241(a)(1)(B), 8 U.S.C. § 1231(a)(1)(B), the period itself will be lengthened under INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C) if the alien frustrates his removal in particular ways–namely, "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal," then the removal period "shall be extended beyond a period of 90 days and the alien

may remain in detention during such extended period . . . ."

Third, and finally, the government has discretion under 8 U.S.C. § 1231(a)(6) to detain certain classes of aliens longer, after the removal period has expired:

> An alien ordered removed who is inadmissible under [8 U.S.C. § 1182], removable under [8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4)] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

See 8 U.S.C. § 1231(a)(6) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); see also 8 C.F.R. 241.4(c)(1) (delegating authority to INS District Directors to make initial custody determinations as well as subsequent determinations during 90-day removal period and 90-day post-removal-period).

However, the Supreme Court in Zadvydas rejected as unconstitutional the Government's argument that the United States Attorney General has unfettered discretion to detain, for an indefinite time, an alien who is subject to a final removal order. Zadvydas, 533 U.S. at 689, 692. As the Supreme Court noted, "[t]he serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any [procedural] protection is obvious." The Supreme Court found that "the statute, read in light of the Constitution's demands . . . does not permit indefinite detention." Id. (emphasis supplied). To save the statutory section from unconstitutionality, the Supreme Court placed a temporal limitation on the Government's ability to detain aliens after the 90-day removal period, holding in Zadvydas v. Davis that an alien may be detained past the removal period only for "a period reasonably necessary to bring about that alien's removal from the United States." Id. at

689. "[F]or the sake of uniform administration in the federal courts," and in recognition that its holding would lead to difficult judgment-calls, the Supreme Court stated that six months was a "presumptively reasonable period of detention" in the post-removal-period context. *Id.* at 700-01. The *Zavydas* six-month period includes the initial 90-day removal period, plus another 90 of days of additional time to effect the actual deportation. *Id.* at 701. However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699 (citation omitted). After this six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

### 1.    Analysis of Petitioner's Detention From the Final Order of Removal on August 6, 2007, to the Present Time

With the foregoing principles in mind, the Court turns to consideration of petitioner's detention following the affirmance of the IJ's removal order by the BIA on August 6, 2007. When respondents filed their motion to dismiss in December 2007, they argued that any challenge to the constitutionality of his detention pursuant to INA § 1226(c) became moot upon the BIA's order dated August 6, 2007, affirming the IJ's decision finding Arthur deportable. As of that date, respondents argued, Arthur's detention was no longer mandated by § 1226(c), which applies to aliens held in custody pending decision on removability. Rather, respondents asserted, the continued detention of Arthur, who had been the subject of an administratively final order of

removal[9] since August 6, 2007, was authorized by INA § 241(a)(2), 8 U.S.C. § 1231(a)(2).[10]

INA § 241, Title 8 U.S.C. § 1231 governs the detention by DHS/ICE of aliens whose removal from the United States has been administratively ordered. As relevant to this action, Title 8 U.S.C. § 1231 provides that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). INA § 241(a) goes on to give three possible events that could serve to mark the start of the "removal period," depending upon which one is the latest. Generally, the six-month rule of *Zadvydas* is easily applied in routine cases where there is no question about when the 90-day removal period began to run. However, two of the possible dates under INA § 241(a)(1)(B) are relevant here.  The first is August 6, 2007, "[t]he date the order of removal becomes administratively final." INA § 241(a)(1)(B) goes on to state that "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order" will mark the beginning of the removal period. Here, Arthur filed a timely appeal of the BIA's August 6, 2007 dismissal and was granted a formal stay of his removal order by the Second Circuit,[11] making his case "a textbook example of the application of section 241(a)(1)(B)(ii)," *Fuller v. Gonzalez*, No. 04-CV-2039(SRU), 2005 U.S. Dist. LEXIS 5828, at

---

[9]       *See* 8 C.F.R. § 1241.1 ("An order of removal made by the immigration judge . . . shall become final . . . upon dismissal of an appeal by the [BIA].").

[10]       From the time that Arthur commenced his habeas petition, he has been invoking INA § 241(a). Using March 30, 2006, as the starting point of his commencement, Arthur contended that because he has been detained longer than six months, his custody is in violation of *Zadvydas*. Arthur, however, misapprehends *Zadvydas*. Arthur was *not* under a final order of removal when he initially filed the first Petition, so neither INA § 241(a) nor the *Zadvydas* six-month principle had yet become applicable to his case.  Because Arthur was not under a final order of removal at the time he filed his habeas petition, respondents understandably and reasonably construed his claims as falling under INA § 236(c).

[11]       The Second Circuit has not yet issued its final order regarding Arthur's petition for review.

*5 (D. Conn. Apr. 8, 2005).

If Arthur had sought no further review of his case after the BIA affirmed the IJ's removal order, then the 90-day removal period would have begun on August 6, 2007. However, once the Second Circuit issued its Stay of Removal, the start of the 90-day removal period was deferred. *See* 8 U.S.C. § 1231(a)(1)(B). *Accord*, *e.g.*, *Singh v. Holmes*, No. 02-CV-529F, 2004 WL 2280366, at *4 (W.D.N.Y. Oct. 8, 2004)) ("In the instant case, Singh's filing of a Petition for Review seeking the Second Circuit's review of the BIA's December 26, 2001 decision affirming the IJ's December 20, 2000 decision, and the Second Circuit's order that Singh's removal to Guyana be stayed pending such judicial review, operates to prevent commencement of the 90-day removal period until the Second Circuit has judicially reviewed the Final Removal Order as to Singh."); *see also Sai Jiao Zhiang v. Chertoff*; Civ. No. 06-4486 (DSD/RLE), 2008 WL 80582, *9 (D. Minn. Jan. 8, 2008) ("If Jiang had sought no further review of her case, then the 90-day period would have begun on that date. However, once the Second Circuit issued its Stay of Removal, the start of the 90-day removal period was deferred until June 14, 2007, that is, the date of the Mandate issued by the Second Circuit, which dismissed Jiang's appeal.") (footnote omitted); *Bah v. Cangemi*, 489 F. Supp.2d 905, 914 (D. Minn. 2007).[12] Since the Second Circuit

---

[12]     The district court in *Bah v. Cangemi* provided this helpful hypothetical illustrating the retrospective nature of the determination of the removal period's commencement:

> Suppose that an alien's order of removal becomes administratively final on Day 1 because the BIA dismisses the alien's appeal. The alien then petitions the court of appeals for review of the dismissal and asks for a stay. The court of appeals does not rule on the stay order. On Day 200, the alien petitions for a writ of habeas corpus in the district court, relying on *Zadvydas*. If the alien can establish that his or her removal is not reasonably foreseeable, the alien would, as of Day 200, have a meritorious habeas claim in the district court.

> But suppose that, on Day 201, the court of appeals grants the stay. Under § 1231(a)(1)(B), the stay does not suspend the removal period; instead, it defers the start of the removal period. Seen from Day 200, the removal period began on Day 1. But seen from Day 202, the removal period never began. And if the removal period never began, neither did the *Zadvydas* clock, and § 1226 (the

has not issued its Mandate in this case, the judicial Stay remains in place, and Arthur's removal

period has not yet begun.

Therefore, I recommend finding that Arthur has not perfected a statutory claim for habeas

relief under INA § 241, Title 8 U.S.C. § 1231, because his 90-day removal period has not even

begun, let alone expired. As an alternative basis for rejecting a statutory claim under INA § 241,

I recommend finding that Arthur has failed to show, at this time, that his continued custody is in

violation of the statute or due process requirements. INA § 241(a)(6), 8 U.S.C. § 1231(a)(6)

applies to criminal aliens such as Arthur, and states as follows:

> An alien ordered removed who is inadmissible under section 1182 of this title,
> removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title *or*
> who has been determined by the Attorney General to be a risk to the community
> *or* unlikely to comply with the order of removal, *may be detained* beyond the
> removal period and, if released, shall be subject to the terms of supervision in
> paragraph (3).

INA §241(a)(6), 8 U.S.C. § 1231(a)(6) (emphasis supplied). Arthur is removable under §

1227(a) because of his prior aggravated felony conviction. Furthermore, DHS/ICE has

determined, following a review of Arthur's file, that he is both a risk to the community and

unlikely to comply with the removal order. In its decision to continue custody, issued on

November 9, 2007, DHS/ICE found,

> Your criminal history includes a conviction for Sexual Abuse – forcible
> compulsion, where the victim was a child, as well as resisting arrest, bench
> warrants and notation [sic] of being a fugitive from justice. Because of this
> history of disregard for the laws and order of the United States and its officials,
> you are considered a threat to the community and flight risk if you were to be

---

provision that applies before and during immigration proceedings) rather than § 1231 (the
provision that applies after immigration proceedings) governs the alien's detention.

*Bah*, 489 F. Supp.2d at 917.

released at this time.

Resp't Ex. A at 13-14 (Docket No. 11-1, No. 07-CV-6158). DHS/ICE's conclusion is amply

supported by the documentary evidence submitted by respondents detailing Arthur's lengthy

history of criminal conduct and convictions.

The Court acknowledges that Arthur's removal period may commence in the near future,

if the Second Circuit issues a mandate denying Arthur's petition for review, and lifts its judicial

stay. However, even if that occurs, DHS/ICE still has a period of ninety days from the date of the

Second Circuit's final order (i.e., the removal period) in which to remove Arthur. Because

Arthur's 90-day removal period has not begun and thus has not expired, then *ipso facto*, the

presumptively reasonable six-month period identified in *Zadvydas v. Davis* has not expired.

*Accord*, *e.g.*, *Sai Zhao Jiang v. Chertoff*, 2008 WL 80582, at *7-8. Consequently, the Court

recommends rejecting any claim under *Zadvydas v. Davis* as premature at this juncture.

Even if Arthur's presumptively reasonable six-month period had expired, the Court does

not believe that Arthur has provided good reason to believe that there is no significant likelihood

of his removal, assuming that the judicial stay is lifted. *See Zadvydas v. Davis*, 538 U.S. at 701.

The Supreme Court held in *Zadvydas* that an alien challenging his confinement beyond six

months from the beginning of the removal period bears the burden of "provid[ing] good reason

to believe that there is no significant likelihood of removal in the reasonably foreseeable future. .

. ." *Id.* at 701. As the Supreme Court later explained, in *Zadvydas*, the aliens who were

challenging their detention following final orders of deportation were ones for whom removal

was "no longer practically attainable." *Id.*, at 690. The *Zadvydas* court thus held that the

detention there did not serve its purported immigration purpose, and granted the aliens relief.

Unlike the aliens in *Zadvydas*, Arthur is not stateless; although he refuses to concede this point, Arthur is a native and citizen of Panama by birth.

Even if Arthur could show that his repatriation was not reasonably foreseeable, which he has not done, the Government then must "respond with evidence sufficient to rebut that showing." *Id.*  It appears to this Court that based on the record to date, the Government could come forward with sufficient evidence to make such a showing. Indeed, ICE was actively pursuing removal of petitioner prior to the issuance of the judicial stay by the Second Circuit, and had contacted the Panamanian consulate by telephone on August 22, 2007; September 19, 2007; October 9, 2007; October 10, 2007; and October 25, 2007, to inquire about the status of the request for travel documents for Arthur. *See* Resp't Ex. A at 18-23 (Docket No. 11-1, No. 07-CV-6158). There is a notation by a DHS official in a Custody Review Report dated November 2, 2007, that "[t]he consulate of Panama has indicated that they are merely waiting for the approval from Panama to issue a travel document for [petitioner's] return to his native country." *Id.* at 21. On or about November 27, 2007, at Consulate Armando Valles' request, a personal interview of Arthur was conducted; the Court gleans from the notations in the "Travel Document Issuance Log" Panama would not issue travel documents unless the consulate personally interviewed the applicant. The record contains documentation regarding travel arrangements for Arthur to go to the consulate and the Court presumes that the interview occurred.  As of December 20, 2007, at the latest, Government could not take any further steps to deport Arthur, since his removal had been judicially stayed. Thus, although Arthur's "detention has been lengthy, it is not indefinite: he will ultimately be removed if his application for relief is denied or released if he prevails," *Reyes-Cardenas v. Gonzales*, No. 05 cv 5687(KMW)(RLE), 2007 WL 1290141, at *7 (S.D.N.Y.

Apr. 30, 2007).

In *Reyes-Cardenas v. Gonzales*, the habeas petitioner argued that "he should not be subject to incarceration because he secured a stay of removal" and sought to be temporarily released pending the outcome of the Second Circuit's review of his removal order. The district court stated that the Due Process Clause of the Fifth Amendment required that a criminal alien be provided with an opportunity to be heard on the question of conditional release pending judicial review of a final administrative order of removal even where the alien has obtained a judicial order staying the execution of his removal. 2007 WL 1290141, at *7 (citing *Oyedeji v. Ashcroft*, 332 F. Supp.2d 747, 753-54 (M.D. Pa. 2004); *Harvey v. Homeland Security*, No. Civ.A. 05-413(SRC), 2006 WL 314528, at *3 (D. N.J. Feb. 9, 2006)). The district court rejected the petitioner's due process claim in *Reyes-Cardenas*, noting that he had received three administrative reviews of his custody status during the course of his detention, during which DHS/BICE reviewed his file and any arguments and evidence he submitted regarding his detention. *See id.* The district court nevertheless noted that DHS/ICE had indicated that the petitioner in *Reyes-Cardenas* would receive additional custody reviews and be able to present further information for DHS/ICE's consideration. *See id.*

As in *Reyes-Cardenas*, Arthur received an individualized custody determination on November 2, 2007, after which he was provided with a letter from ICE dated November 9, 2007, detailing the reasons why he going to be further detained in custody. A letter from DHS dated November 9, 2007, informed Arthur that "all future reviews" would be conducted by the Headquarters Post-order Detention Unit (HQPDU), and that HQPDU would "at the earliest convenience, provide [him] with written notification regarding the specifics of [his] next

review." Thus, it appears that Arthur has been afforded with the appropriate procedural due process protections in connection with his continued detention.

Arthur also appears to be arguing that respondents have violated his substantive due process rights by failing to conduct a meaningful custody review pursuant to 9 C.F.R. § 241.4, in that they have failed to make a proper assessment of his threat to the community and his flight-risk status. Such a claim attacking DHS/ICE's discretionary determinations is not subject to review in a § 2241 habeas petition in federal court. *Accord Reyes-Cardenas*, 2007 WL 1290141, at *7 (citations omitted) ("[T]he Court will give deference to the administrative decisions that continued [petitioner's] detention in federal immigration custody."). Thus, I recommend that any such claim be denied as well.

## IV.   Conclusion

For the foregoing reasons, I recommend that Alberto Arthur's petitions for a writ of habeas corpus in No. 07-CV-6158 and No. 07-CV-6473 be denied without prejudice, with leave to re-file, should the Second Circuit Court of Appeals deny his petition for review and lift the stay, and should his detention in DHS custody continue beyond the 90-day removal period. Furthermore, I find that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, I recommend that no certificate of appealability should issue with respect to any of petitioner's claims.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: August 6, 2008
      Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1ˢᵗ Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: August 6, 2008
          Rochester, New York